UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| CAROLYN LAMAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:16-cv-00138-JMS-MPB |
| ) | |
| CROWN BUILDING MAINTENANCE CO. ) | |
| d/b/a ABLE BUILDING MAINTENANCE, ) | |
| JOHNSON CONTROLS, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ZURICH AMERICAN INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Counter Claimant, ) | |
| ) | |
| v. ) | |
| ) | |
| JOHNSON CONTROLS, INC., ) | |
| ) | |
| Counter Defendant. ) | |
| ) | |
| JOHNSON CONTROLS, INC., ) | |
| ) | |
| Cross Claimant, ) | |
| ) | |
| v. ) | |
| ) | |
| CROWN BUILDING MAINTENANCE CO., ) | |
| ) | |
| Cross Defendant. ) | |
| ) | |
| JOHNSON CONTROLS, INC., ) | |
| ) | |
| Third Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |

1

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | )<br>)<br>) |
| Third Party Defendant. | ) |

# ORDER

This case arises out of an accident suffered by Plaintiff Carolyn Lamar. She alleges that she slipped and fell on a puddle of wet floor wax in the medical clinic in which she worked. Ms. Lamar has sued Johnson Controls, Inc. ("JCI"), the contractor responsible for the clinic's facilities maintenance, and Crown Building Maintenance Company, d/b/a Able Building Maintenance ("Crown"), the company subcontracted by JCI to provide the facility's janitorial services. JCI has moved for summary judgment, arguing that it cannot be held liable for the actions committed by its subcontractor, Crown. For the reasons that follow, the Court grants JCI's Motion for Summary Judgment, [Filing No. 88].

## I.
### BACKGROUND

Humana, Inc. operates a number of health care facilities throughout the country, [Filing No. 89-4 at 16-17], including the Veterans Affairs Outpatient Clinic in Terre Haute, Indiana (the "Clinic"), [Filing No. 89-5 at 28; Filing No. 89-5 at 43]. Humana contracted with JCI to provide facilities and project management services to many of Humana's facilities, including the Clinic. [Filing No. 89-4 at 22; Filing No. 102-2.] JCI subcontracted with Crown to provide janitorial services for the Clinic, and Crown was responsible for providing the Clinic's floor care. [Filing No. 89-4 at 22-27.] On Saturday, August 2, 2014, Crown's employees stripped and waxed the Clinic's tile floors. [Filing No. 89-2 at 3.]

Ms. Lamar was employed as a nurse practitioner for Humana, and she worked in the Terre Haute Clinic. [Filing No. 89-5 at 28-30; Filing No. 89-5 at 43.] On the afternoon of Saturday,

August 2, 2014, Ms. Lamar went to the Clinic while it was closed to patients in order to complete work on patient charts. [Filing No. 89-5 at 72-73.] Ms. Lamar alleges that while walking down the hallway to her office, she slipped and fell in a puddle of wet floor wax. [Filing No. 89-5 at 79-85.] Ms. Lamar suffered numerous injuries as a result of the fall, including two torn rotator cuffs and a hamstring injury. [Filing No. 102-4 at 1.]

Ms. Lamar filed a complaint in the Vigo County Superior Court against JCI and Crown, alleging that she suffered injuries as a result of the negligence of those defendants. [Filing No. 1-1 at 4.] On April 25, 2016, Crown successfully removed that action to this Court on the basis of diversity jurisdiction. [Filing No. 1.] On October 26, 2016, JCI filed a cross-claim against Crown and filed a third-party complaint against Zurich American Insurance Company ("Zurich"). [Filing No. 42.] On December 16, 2016, Zurich filed a counterclaim against JCI. [Filing No. 50.] Presently pending before the Court is JCI's Motion for Summary Judgment as to Ms. Lamar's Complaint, [Filing No. 88], which is fully briefed and ripe for the Court's review.[1]

## II.
### LEGAL STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or

---

[1] In the prayer for relief section of its Motion for Summary Judgment, JCI also requests that "final judgment be entered against…Counter-Claim Plaintiff." [Filing No. 88 at 2.] The Counter-Claim plaintiff in this case is Zurich. However, neither party's briefing addresses this prayer for relief, or addresses in any way Zurich's involvement in the case. As such, the Court construes this request as inadvertent and like the parties, will not address it.

3

affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657

F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## III.
### DISCUSSION

In order to prove negligence, Ms. Lamar must establish that: (1) JCI owed her a duty of care; (2) JCI breached that duty by allowing its conduct to fall below the applicable standard of care; and (3) JCI's breach of duty proximately caused a compensable injury to Ms. Lamar. *See Rogers v. Martin*, 63 N.E.3d 316, 321 (Ind. 2016). Absent a duty, there can be no breach, and whether a duty exists is a question of law. *Id.* Under Indiana law, "the long-standing general rule has been that a principal is not liable for the negligence of an independent contractor." *Bagley v. Insight Commc'ns Co., L.P.*, 658 N.E.2d 584, 586 (Ind. 1995). The rationale behind the rule is that a general contractor often has little control over the subcontractor. *Stumpf v. Hagerman Constr. Corp.*, 863 N.E.2d 871, 876 (Ind. Ct. App. 2007); *see also, Moore v. Shawmut Woodworking & Supply, Inc.*, 788 F. Supp. 2d 821, 824 (S.D. Ind. 2011).

Five exceptions to that general rule have also long been recognized, known as the non-delegable duty doctrine: "(1) where the contract requires the performance of intrinsically dangerous work; (2) where the principal is by law or contract charged with performing the specific duty; (3) where the act will create a nuisance; (4) where the act to be performed will probably cause injury to others unless due precaution is taken; and (5) where the act to be performed is illegal." *Bagley*, 658 N.E.2d at 586. The duties associated with these exceptions "are considered

5

non-delegable, and an employer will be liable for the negligence of the contractor, because the responsibilities are deemed 'so important to the community' that the employer should not be permitted to transfer these duties to another." *Myers v. Bremen Casting, Inc.*, 61 N.E.3d 1205, 1214-15 (Ind. Ct. App. 2016), *transfer denied*, 76 N.E.3d 141 (Ind. 2017) (citing *Bagley*, 658 N.E.2d at 586). "The exceptions reflect the notion that, in certain circumstances, the employer is in the best position to identify, minimize, and administer the risks involved in the contractor's activities." *Carie v. PSI Energy, Inc.,* 715 N.E.2d 853, 855 (Ind. 1999) (citation and quotation omitted).

JCI moves for summary judgment on Ms. Lamar's claim against it, arguing that Ms. Lamar cannot establish that JCI owed her a duty of care. [Filing No. 89 at 4.] JCI contends that it cannot be held liable for independent contractor Crown's actions, because JCI had no duty to supervise (and did not exert control over) Crown. [Filing No. 89 at 5-6.] Ms. Lamar acknowledges the general rule under Indiana law that "a general contractor is typically not liable for the actions of a subcontractor." [Filing No. 102 at 8.] But she argues that two exceptions to this rule apply in her case, because: (1) JCI assumed a contractual duty of care; and (2) the floor waxing would probably cause injury to others absent due precaution taken to avoid harm. [Filing No. 102 at 8.] On reply, JCI argues that neither exception to the general non-liability rule regarding contractors applies. [Filing No. 117.] The Court addresses each in turn.[2]

---

[2] Defendant and Cross-Defendant Crown also submitted briefing in response to the Motion for Summary Judgment. [Filing No. 109.] However, there is no pending motion regarding any claims against or by Crown—*i.e.*, JCI, in its capacity as a Cross-Claimant, did not move for summary judgment against Crown in its capacity as Cross-Defendant. The Court, therefore, did not consider that briefing in its resolution of the pending Motion.

6

**A. Contractual Duty of Care**

Where a principal is charged by law or contract with performing a specific duty, it may be held liable for the negligence of an independent contractor. *Marks v. N. Indiana Pub. Serv. Co.*, 954 N.E.2d 948, 952-53 (Ind. Ct. App.), *adhered to on reh'g*, 964 N.E.2d 238 (Ind. Ct. App. 2011). "To determine whether a principal is charged with a duty of care under a contract, we look to the contract as a whole by examining all of its provisions. … Actionable negligence may be predicated upon a contractual duty only where the contract affirmatively evinces an intent to assume a duty of care." *Id.* (citing *Merrill v. Knauf Fiber Glass GmbH*, 771 N.E.2d 1258, 1268 (Ind. Ct. App. 2002)). To impose liability, a contract provision must be specific as to the duty assumed by the general contractor. *Harris v. Kettelhut Constr., Inc.,* 468 N.E.2d 1069, 1076-77 (Ind. Ct. App. 1984).

Ms. Lamar argues that the Master Services Subcontractor Agreement ("Subcontractor Agreement") between JCI and Crown "gave JCI more than minimal control over safety in [its subcontractors'] work sites, creating a duty of care to its customer (Humana) and their employees, including Plaintiff." [Filing No. 102 at 11.] The Agreement provides that "[t]he Services and Subcontractor's performance of the Services are subject to examination, inspection, and testing by JCI at all reasonable times and places." [Filing No. 102-1 at 8.] Section 26, the "Safety" provision of the Subcontractor Agreement provides as follows:

> At all times, Subcontractor shall use suitable precautions to prevent injury to its employees and others on or about the Customer Locations and shall comply with all safety regulations required by the Occupational Safety and Health Act or by any other governmental authority having jurisdiction over JCI, Subcontractor, the Services or the Customer Locations. In connection with the performance of the Services, Subcontractor agrees to abide by JCI's Safety Policy, a complete copy of which is attached to this Services Subcontract as Attachment 4 and any similar policy issued by the Customer. In addition, Subcontractor agrees to adhere to and perform the Services in accordance with the Customer's applicable health and safety policies and procedure. The applicability of said policies and procedures

7

shall be determined solely by Johnson Controls. In the event of a conflict, disputes and inconsistencies between any of the aforementioned programs, policies and procedures, shall be resolved in favor of the most stringent program, policy or procedure which affords the Customer the greatest amount of protection.

As between JCI and Subcontractor, Subcontractor is solely responsible for taking reasonable precautions for the safety of Subcontractor's employees, and Subcontractor may not rely upon JCI's implied or stated control of the workplace to reduce this responsibility or assume that JCI, as the prime Contractor, controls or has the ability to control the presence or absence of hazardous conditions in the workplace to which Subcontractor's employees may be exposed. Subcontractor shall indemnify and hold harmless JCI and its directors, officers, employees, agents, representatives, shareholders, affiliates, and assigns and successors, from and against any and all losses, costs, damages, expenses (including reasonable legal fees and defense costs), claims, causes of action, citations or liability, directly or indirectly, relating to or arising from Subcontractor's failure to take reasonable precautions for the safety of Subcontractor's employees.

[Filing No. 102-1 at 13-14.] The referenced safety policy provides for disciplinary action (written reminder, suspension from site, and permanent dismissal from site) against subcontractors who "work in an unsafe manner." [Filing No. 102-1 at 18.] JCI also "reserves the right to require Subcontractor to remove from the Customer Locations any employee of Subcontractor who JCI deems incompetent, careless, or otherwise objectionable." [Filing No. 102-1 at 7.]

Ms. Lamar argues that the degree of detail provided in the Subcontractor Agreement constitutes evidence of control on the part of JCI over its subcontractor Crown, and therefore a contractually created duty of care. However, what is absent from the Subcontractor Agreement—and what distinguishes it from the contracts present in the cases relied upon by Ms. Lamar—is any statement that JCI affirmatively intended to assume a specific duty of care. In *Stumpf*, cited by Ms. Lamar, the contract at issue stated that "[t]he Contractor shall take all necessary precautions for the safety of employees on the work. … Contractor shall designate a responsible member of its organization on the work, whose duty shall be the prevention of accidents." *Stumpf*, 863 N.E.2d at 876. And in *Moore*, also cited by Ms. Lamar, the contract required the contractor "to take

reasonable precautions for employees on the work. Second, the contract requires [the contractor] to designate a person responsible for the prevention of accidents." *Moore*, 788 F. Supp. 2d at 826. And that contract made the contractor "responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the contract." *Id.*

Here, the Agreement between JCI and Crown contains no such express statements of JCI's responsibility for or control over the safety of those present at the Clinic—whether Crown's employees or third parties. While the Subcontractor Agreement requires Crown to abide by JCI's safety policies, it also requires that Crown follow the customer Humana's safety policies. And, in the event that those two policies conflict, the Agreement specifies that the more stringent should apply—even if that means that JCI's policies do not control. Moreover, the second paragraph of the safety provision specifies that "[a]s between JCI and Subcontractor, Subcontractor is solely responsible for taking reasonable precautions for the safety of Subcontractor's employees, and Subcontractor may not rely upon JCI's implied or stated control of the workplace to reduce this responsibility or assume that JCI, as the prime Contractor, controls or has the ability to control the presence or absence of hazardous conditions in the workplace to which Subcontractor's employees may be exposed." [Filing No. 102-1 at 13.] These provisions, as in *Marks*, delegate any duty of care—at least as to Crown's employees—to Crown. *See Marks*, 954 N.E.2d at 953. And the contract contains no provisions indicating an intent to assume a duty of care as to third parties.

As Ms. Lamar points out, the Subcontractor Agreement allows for JCI to exercise some authority over Crown's activities. The Agreement permits JCI to impose disciplinary action against subcontractors who "work in an unsafe manner." [Filing No. 102-1 at 18.] And it allows JCI to "require Subcontractor to remove from the Customer Locations any employee of Subcontractor who JCI deems incompetent, careless, or otherwise objectionable." [Filing No. 102-

9

1 at 7.] It also provides that "[t]he Services and Subcontractor's performance of the Services are subject to examination, inspection, and testing by JCI at all reasonable times and places." [Filing No. 102-1 at 8.] Similar provisions were at issue in *Marks*, where the contract provided that:

> If, in the opinion of [the Contractor], any part of the services to be provided by [the Subcontractor] pursuant to this Contract is not being executed in a safe manner as defined herein, [the Contractor] may order [the Subcontractor] to stop providing such services immediately. And the services shall not be resumed until the proper methods have been employed by [the Subcontractor]. All equipment which, in the opinion of [the Contractor], is inadequate or unsafe shall be removed and replaced at the expense of [the Subcontractor].

*Marks*, 954 N.E.2d at 954. The court concluded that "the 'assumption by contract' exception to the general rule of nonliability is not triggered merely because [a contractor] may have a right to inspect and test the work, approve of the work and/or employees of the independent contractor *or require the contractor to follow company safety rules.*" *Marks*, 954 N.E.2d at 954 (emphasis in original) (citing *Armstrong v. Cerestar USA, Inc.,* 775 N.E.2d 360, 371 (Ind. Ct. App. 2002)). The Court concludes that the provisions at issue here are analogous to those in *Marks*, and that those types of supervisory activities do not evince an intent to assume a specific duty of care to third parties.

That conclusion is also supported by the multiple indemnification provisions contained within the Subcontractor Agreement, including the following: "Subcontractor hereby assumes exclusive responsibility for any and all personal injury, including death or property damage of whatever nature and however caused, which results from or arises out of Subcontractor's performance of the Services," [Filing No. 102-1 at 10]; and "Subcontractor shall indemnify and hold harmless JCI…from and against any and all losses, posts, damages, expenses (including reasonable legal fees and defense costs), claims, causes of action, citations or liability, directly or indirectly, relating to or arising from Subcontractor's failure to take reasonable precautions for the

safety of Subcontractor's employees," [Filing No. 102-1 at 13-14]. Those provisions both specifically disclaim any duty of care owed by JCI, and again squarely place the duty on Crown to ensure safety at the work site.

The Court concludes that the contractual provisions cited by Ms. Lamar—both individually and collectively—do not clearly evince an intent on the part of JCI to assume a specific duty of care. As such, the contract does not form an exception to the general rule that a contractor is not liable for the negligence of its subcontractor. Therefore, JCI did not owe Ms. Lamar a duty of care under this exception.[3]

### B. Due Precaution Exception

Ms. Lamar argues that a second exception to the general rule of contractor non-liability applies in this case. She contends that JCI had a non-delegable duty of care to her, because the act of stripping and waxing the floors would "probably cause injury to others unless due precaution [were] taken to avoid harm." [Filing No. 102 at 14.] JCI responds that the subject conduct involves

---

[3] The Court notes that both parties rely on cases involving the injury of subcontractors' employees—not third parties—in support of their positions. As the Indiana Court of Appeals has noted, "from our review of these cases and other relevant authority, it is apparent that our appellate courts have typically been asked only to determine whether a general contractor assumed a legal duty of care for jobsite-employee safety pursuant to a contract to which it was a party, and that our courts have not been asked whether a general contractor has contractually assumed a duty to a third party." *Gwinn*, 9 N.E.3d at 693. However, that court concluded that "it is inconsequential that our reported caselaw on this issue involves jobsite safety claims made by subcontractor employees who were injured or killed on the construction site. Our supreme court has specifically recognized that the five nondelegable-duty exceptions to the general rule regarding general contractor nonliability for subcontractor negligence apply to lawsuits by both employees of the contractor or subcontractor and third parties. …the results reached and reasoning offered [in those cases] are indicative of our courts' willingness to apply the exceptions to the general rule and to bind general contractors to the specific duties assumed by contract." *Id.* at 693-94 (internal citation omitted).

only routine and ordinary risks, which are explicitly not encompassed by this exception. [Filing No. 117 at 7.]

"Under the due precaution exception to the general rule of non-liability, a principal may be held liable for the negligence of an independent contractor where the work to be performed will probably cause injury to others unless due precaution is taken." *Myers*, 76 N.E.3d at 1213 (citing *McDaniel v. Bus. Inv. Grp., Ltd.*, 709 N.E.2d 17, 22 (Ind. Ct. App. 1999)). Application of this exception requires review of several elements: a peculiar risk; the principal's foreseeability of that risk; and an injury consistent with the peculiar risk. *Myers*, 61 N.E.3d at 1215. "A peculiar risk is the risk of a particularized harm specific to the work being performed or the conditions under which it is performed. The exception applies only when the risk involved is something more than the routine and predictable hazards generally associated with a given occupation: it must be a risk unique to the circumstances of a given job." *Id.* (internal citation and quotation omitted). Where the exception applies, the precautions necessary must be "special." *Ryobi Die Casting v. Montgomery*, 705 N.E.2d 227, 229 (Ind. Ct. App. 1999).

Ms. Lamar argues that the peculiar risk involved in this case is "a slip and fall on wet wax." [Filing No. 102 at 15.] In support of that argument, she points to JCI site supervisor Diana Watson's testimony that wet wax is slick and can result in a slip and fall. [Filing No. 102 at 15 (citing Filing No. 89-4 at 51).] However, the slickness of wet wax is precisely the type of "routine and predictable hazard" that renders the exception inapplicable. *See Ryobi*, 705 N.E.2d at 229 (concluding that roofing contractor's fall through roof was not covered by exception, because "the risks associated with [plaintiff's] roofing job would have been routine and ordinary"); *McDaniel*, 709 N.E.2d at 22 (holding that trench cave-ins did not represent a "peculiar" risk of trench digging). Here, the risks associated with leaving wet wax on a tile floor would have been ordinary

and routine to a company charged with stripping and waxing the subject floors on a quarterly basis. Moreover, the precautionary measures that would need to be taken cannot be described as special—those measures involved simply removing excess wax from the floor. Therefore, the Court concludes that the "due precaution" exception does not apply, and JCI did not owe Ms. Lamar a duty of care under it.

Under Indiana law, "the long-standing general rule has been that a principal is not liable for the negligence of an independent contractor." *Bagley*, 658 N.E.2d at 586. Because Ms. Lamar has not demonstrated that an exception to this general rule applies in her case, she cannot establish that JCI owed her a duty of care. She therefore cannot meet one of the three requirements to maintain a negligence action.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant JCI's Motion for Summary Judgment. [Filing No. 88]

Remaining for trial are Ms. Lamar's claim against Crown, [Filing No. 1]; Zurich's counter-claim against JCI, [Filing No. 50]; JCI's cross-claim against Crown, [Filing No. 42]; and JCI's third-party complaint against Zurich, [Filing No. 42]. The Court requests that the Magistrate Judge confer with the parties regarding the status of those remaining claims in light of this ruling, and possible resolution of claims unaffected by this ruling. No partial final judgment shall issue at this time.

Date: 10/20/2017

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

13

Distribution:

Lynsey Michelle David
LEWIS WAGNER LLP
ldavid@lewiswagner.com

Margaret Domanski
Cremer, Spina, Shaughnessy, Jansen, & Siegert, LLC
One N. Franklin 10th Floor
Chicago, IL 60606

Georgia Lynne Hartman
KLEZMER MAUDLIN PC
ghartman@klezmermaudlin.com

Jeffrey D. Hawkins
KIGHTLINGER & GRAY
jhawkins@k-glaw.com

Adam Spencer Ira
KIGHTLINGER & GRAY - Evansville
aira@k-glaw.com

Timothy Loren Karns
FROST BROWN TODD LLC
tkarns@fbtlaw.com

Randal M. Klezmer
KLEZMER & ASSOCIATES
rklezmer@klezmermaudlin.com

Anthony R. Martinez
SHOOK HARDY & BACON LLP
amartinez@shb.com

Brian A. O'Gallagher
CREMER, SPINA, SHAUGHNESSY, JANSEN & SIEGERT LLC
bogallagher@cremerspina.com

Kevin C. Schiferl
FROST BROWN TODD LLC
kschiferl@fbtlaw.com

Richard K. Shoultz
LEWIS WAGNER LLP
rshoultz@lewiswagner.com

Erin Vaughn
SHOOK, HARDY & BACON L.L.P.
evaughn@shb.com